## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 25 2015, 10:02 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael C. Feldhake,<br>*Appellant-Respondent,*<br><br>v.<br><br>Meryle Feldhake,<br>*Appellee-Petitioner* | February 25, 2015<br><br>Court of Appeals Case No.<br>49A04-1405-DR-250<br><br>Appeal from the Marion Superior Court.<br>The Honorable Michael D. Keele, Judge.<br>The Honorable Victoria M. Ransberger, Magistrate.<br>Cause No. 49D07-1304-DR-15091 |

**Baker, Judge.**

[1] Michael Feldhake (Husband) appeals the trial court's denial of his motion to correct error. Husband argues that 1) the trial court erred when it valued certain assets; 2) the trial court erred when it found that Husband had been allowed to obtain his personal property and did not divide all of the parties' personal property; 3) the trial court erred when it failed to find that Meryle Feldhake (Wife) had failed to pay certain amounts to Husband as required by the provisional order; and 4) the trial court erred when it did not list the tax liability incurred by Husband and Wife as a debt incurred during the marriage. We affirm the judgment of the trial court, but remand for the limited purpose of allowing the trial court to address the matters of payment pursuant to the provisional agreement and joint tax liability.

## Facts

[2] Husband and Wife were married on June 10, 2010, and separated on or about April 2013. The marriage did not result in children. On April 24, 2013, Wife filed her verified petition for dissolution of marriage, request for preliminary hearing, and request for mutual temporary restraining order. She requested that her marriage to Husband be dissolved and that the trial court divide the assets. On May 7, 2013, Husband filed his verified counter-petition for dissolution of marriage, which also requested that the marriage be dissolved and a division of assets.

[3] At some point before the final hearing, the trial court accepted a preliminary agreement between the parties, issuing a provisional order. Under the terms of

the agreement, Wife was to pay Husband $600 a month to help with the mortgage on a property in Indianapolis.[1]

[4] Both parties submitted financial declarations on January 14, 2014. Husband had previously submitted a financial declaration on May 30, 2013. In addition, Husband had prepared a document on April 1, 2013, less than a month prior to filing, which listed the value of his assets. The May 2013 filing listed a corporate bond in the amount of $30,000. This bond was not included in the January 2014 filing. Additionally, the list of assets created in April 2013 listed husband's "coins and collectibles" at a value of $30,000. A list of the valued coins created by husband in January 2013 lists the value of the coins alone at $20,108. Pet. Ex. 8, 9. However, the financial declaration filed in January 2014 listed the value of the coins at $8,500.

[5] A final hearing was held on January 14, 2014. The parties did not request specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. The trial court issued its decree dissolving the marriage and dividing certain assets on February 12, 2014; in its decree, the trial court made limited sua sponte findings of fact. In enumerating and dividing the marital assets, the trial court took note of the list of assets created in April 2013, as well the financial declarations Husband filed in May 2013 and January 2014. The trial court included the $30,000 corporate bond listed in the May 2013 filing in the marital

---

[1] This preliminary agreement is not in the record. However, both parties stipulate to the existence of a preliminary or provisional order, and Wife testified to its existence at the final hearing. Tr. p. 38.

estate. It also included the coin collection in the list of marital assets and valued it at $20,108.

[6] The trial court also noted that Wife had provided the court with bank account statements showing the value of the accounts on or around the date when the petition for dissolution was filed. Based on these statements, the trial court found that:

> A total of $34,718.23 existed in Husband's Fifth Third savings account as of the date of filing. Shortly after the divorce was filed, Husband depleted this account. Wife did not have access to this account and did not benefit from the use of any of the funds in this account. Husband failed to present any documentation showing that these funds were used for any purpose related to the marriage or for any valid purpose.

Appellant's App. p. 23. The trial court included the $34,718.23 in the Fifth Third savings account in the marital estate.

In addition to the above findings, the trial court found that Husband had been allowed to pick up his "personal property and certain other property" from the marital home. *Id.* at 25. It ordered that the parties should, within ten days, exchange any other property that the parties had agreed to transfer or that the court had ordered to be transferred.

[7] On March 17, 2014, Husband filed his motion to correct error, as well as a request for a temporary restraining order and preliminary injunction. In his motion, Husband included new exhibits regarding his finances, as well as affidavits from himself and his son. Wife filed a motion to strike those affidavits and exhibits and response to the motion to correct error on April 4,

2014. On May 16, 2014, the trial court denied Husband's motion in its entirety. It determined that Husband's attempts to introduce new evidence or exhibits was inappropriate, finding that:

> Husband was non-cooperative during discovery and simply did not present evidence at trial as to his accounts. . . . After the trial is over, the Decree is entered, Husband seeks to revisit and now add documents that clearly should have been provided prior to trial if he wanted them admitted or wanted to challenge Wife's exhibits.

*Id.* at 85. The trial court also determined that "Husband's attempts to detail lists of the items that he wanted or now lists as his son's property is not appropriate and not considered by the court." *Id.* Wife's motion to strike was granted, and the trial court ordered Husband to pay Wife $650 in attorney fees. Husband now appeals.

## Discussion and Decision

[8] Husband argues that the trial court abused its discretion when it denied his motion to correct error. He contends that the trial court erred when it 1) valued and ascertained certain assets; 2) found that Husband had been allowed to obtain his personal property; 3) failed to find that Wife had failed to pay certain amounts to Husband as required by the provisional order; and, 4) did not list the tax liability incurred by Husband and Wife as a debt incurred during the marriage.

# I. Standard of Review

Where, as here, the trial court issues findings of fact sua sponte, the specific findings control only the conclusions they cover, while a general judgment standard applies to any issue on which the court has not entered findings. *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1215 (Ind. Ct. App. 2002). In reviewing the judgment, we will determine if the evidence supports the findings, and then, whether those findings support the conclusion and judgment. *Id.* This Court will only reverse a judgment when it is shown to be clearly erroneous. *Dewbrew v. Dewbrew*, 849 N.E.2d 636, 640 (Ind. Ct. App. 2006). In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn from that evidence; we do not reweigh the evidence or assess the credibility of witnesses. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* A general judgment may be affirmed on any theory supported by the evidence presented at trial. *Id.*

Similarly, the standard of appellate review of the trial court's ruling on a motion to correct errors is abuse of discretion. *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind. 2003). An abuse of discretion has occurred "if the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Bales v. Bales*, 801 N.E.2d 196, 198 (Ind. Ct. App. 2004).

# II. Valuation of Assets

Husband argues that the trial court erred when it valued and ascertained certain assets. He maintains that it erred when it found that a corporate bond existed at the time the petition for dissolution of marriage was filed, when it valued Husband's savings account, and when it valued Husband's coin collection. We note that the burden of producing evidence as to the value of marital assets is upon the parties to the dissolution proceeding. *In Re Marriage of Church* 424 N.E.2d 1078, 1082 (Ind. Ct. App. 1981). The trial court has broad discretion in ascertaining the value of property in a dissolution action. *Keown v. Keown*, 883 N.E.2d 865, 868 (Ind. Ct. App. 2008). Its valuation will not be disturbed absent an abuse of that discretion. *Hartley v. Hartley* 863 N.E.2d 274, 283 (Ind. Ct. App. 2007). The trial court does not abuse that discretion if there is sufficient evidence and reasonable inferences therefrom that supports the result. *Id.*

# A. Corporate Bond

Husband first argues that the trial court erred when it determined that a corporate bond in the amount of $30,000 was in existence at the time of filing and included the bond in the marital estate. He maintains that there was no evidence that a corporate bond existed as of the date of filing. However, in the financial declaration Husband filed on May 30, 2013, he lists "[c]orporate bond, from accident" in the amount of $30,000 as an asset. Appellee's App. p. 3. Furthermore, during the final hearing, Husband affirmed that he had listed the $30,000 corporate bond in his May 2013 financial declaration. Tr. p. 98.

Husband argues that the trial court should not have found that the corporate bond was in existence because, while it was discussed during the final hearing, "it was not clear from the record when the corporate bond came to existence or whether it even still existed." Appellant's Br. p. 17. In short, Husband seems to be arguing that the trial court should have somehow found specific evidence of the value and origin of the bond. This is simply incorrect. As this court has previously held:

> [A]ny party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence. This rule places the burden of producing evidence as to the value of the marital property where it belongs on the parties, rather than on the trial court. It is appropriate to require the parties to bear the burden of gathering and presenting to the trial court evidence as to the value of the marital property rather than to place upon the trial court the risk of reversal if it distributes the marital property without specific evidence of value.

*In re Marriage of Church*, 424 N.E.2d at 1081-82.

Here, the trial court had before it evidence of the existence of the corporate bond in the form of Husband's May 2013 financial declaration, evidence which Husband acknowledged at the final hearing. Husband failed entirely to produce any contrary evidence suggesting that the bond did not exist or had been otherwise disposed of. Therefore, the trial court did not err in listing the $30,000 corporate bond among the marital assets.

# B. Savings Account

Husband also argues that the trial court erred when it valued his Fifth Third savings account at $34,718.23, which was the value of the account on March 31, 2013. He argues that, as the filing date, April 24, 2013, was after the valuation date, the trial court abused its discretion by valuing the account prior to the date of filing. It is true that, for purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Hiser v. Hiser*, 692 N.E.2d 925, 928 (Ind. Ct. App. 1998). However, Husband admitted at trial that he had not provided the trial court with any evidence regarding the value of the savings account on April 24, 2013, the date of filing.

Moreover, the trial court determined that Husband had been depleting the account. Appellant's App. p. 23. It found that, shortly after the divorce, Husband had drained money from the account, but had provided no documentation showing that the funds were used for any valid purpose. *Id.* Wife introduced bank statements showing that on March 31, 2013, the savings account contained $34,718.23. Yet, on April 30, 2013, the savings account contained $5,115.08 dollars. At the final hearing, Husband testified that the approximately $29,603.15 drop in value was attributable to living expenses. Tr. p. 96. He admitted that he had provided no documentation regarding the value

of the savings account on the date of filing. *Id*. at 97. Therefore, we do not find that the trial court erred by valuing the savings account at $34,718.23.[2]

## C. Coin Collection

[17] Husband also argues that the trial court erred when it valued his coin collection at $20,108. He maintains that in doing so, the trial court impermissibly valued the collection before the date of filing. Husband created a document listing his assets for his own purposes on April 1, 2013. Pet. Ex. 8. In that document, he listed the value of coins and collectibles at $30,000. Wife also submitted a document, created in January 2013, in which Husband individually valued the coins in his coin collection, which had a total value of $20,108. As noted above, for purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Hiser*, 692 N.E.2d at 928.

[18] Here, once again, Husband failed to provide the trial court with any documentation regarding the value of the coins on the date of filing. Instead, he argues that the trial court, since it was only provided with documentation valuing the coins in January 2013, should have relied exclusively on his January 2014 financial declaration and his testimony at the final hearing in

---

[2] As noted, Husband testified at the final hearing that he used the money in the savings account for living expenses. Tr. p. 96. In his brief, Husband now makes a contrary assertion—that he used the money in the savings account to purchase the $30,000 corporate bond. No such evidence was presented at the final hearing, and we will not entertain evidence of this assertion now.

determining the value of the coins. In his January 2014 financial declaration and at the final hearing, Husband asserted that the value of the coin collection was $8,500. Appellant's App. p. 21; Tr. p. 81. However, when questioned by opposing counsel, Husband admitted that he had valued the coins at $20,108 for "[i]nsurance purposes." *Id.* at 101. He stated that the value of the coins was dependent upon gold and silver prices, which fluctuate. *Id.* When asked if he would sell the coins for $8500, he responded in the negative, but when asked if he would sell them for $20,000, he testified that he would. *Id.* at 101-102.

[19] Here, the trial court was presented with a document that Husband had prepared prior to the filing of the petition for dissolution. Husband did not provide any evidence to suggest that the value of the coins had diminished since he himself had valued them individually and collectively in January 2013. Under these circumstances, we find that the trial court did not err in valuing the coins at $20,108.

## D. Affidavits and Exhibits Outside the Record

[20] When Husband filed his motion to correct error, he filed affidavits and exhibits outside of the record in support of his claims that the trial court erred in valuing certain assets. He now asserts that the trial court erred when it struck these affidavits and exhibits attached to his motion to correct error, which he intended to "clarify matters already before [the trial court]." Appellant's Br. p. 17. We note that "motions predicated upon newly discovered material evidence are viewed with disfavor." *Kimmel v. State*, 418 N.E.2d 1152, 1157

(Ind. 1981). Whether to grant a new trial on the grounds of newly discovered evidence is within the discretion of the trial court. *Id.* To prevail on a motion to correct error based on newly discovered evidence, Husband needed to demonstrate that the evidence could not have been discovered and produced at trial with reasonable diligence; that the evidence is material, relevant, and not merely cumulative or impeaching; that the evidence is not incompetent; that he exercised due diligence to discover the evidence in time for final hearing; that the evidence is worthy of credit; and, that the evidence raises the strong presumption that a different result would have been reached upon retrial. *Laudig v. Marion Cnty. Bd. of Voters Registration*, 585 N.E.2d 700, 712 (Ind. Ct. App. 1992).

[21] Here, Husband makes no argument as to why this evidence is newly discovered and he asserts no claim that it could not have been discovered and produced at trial with reasonable diligence. The trial court noted in its findings that "Husband was non-cooperative during discovery and simply did not present evidence at trial as to his accounts." Appellant's App. p. 85. The record shows that Husband offered no explanation as to the existence of the corporate bond on his May 2013 financial declaration or to its absence on his January 2014 declaration. We agree with the trial court that his motion to correct error was an attempt to revisit matters discussed at the final hearing by attaching documents that should have been presented at the final hearing but were not. Therefore, the trial court did not err in relying exclusively on the evidence

before it at the final hearing, nor did it err when it granted Wife's motion to strike affidavits and exhibits outside the record.

# III. Personal Property

Next, Husband argues that the trial court erred when it determined that he had previously been allowed to obtain his personal property from the marital residence and failed to divide all personal property from the marital residence. The division of marital assets is within the trial court's discretion, and we will reverse only for an abuse of that discretion. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008). The challenger must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest available on appeal. *Id.* In reviewing the trial court's division, we will neither reweigh the evidence nor assess witness credibility; instead, we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.*

Here, the trial court divided the marital property in accordance with an agreement reached by the parties, determined at the final hearing and through previous correspondence between the parties' counsel. The trial court listed specific items in its decree: "chair, end tables/lamps, chest of drawers, queen bed, Comcast adapter and remote." Appellant's App. p. 25. These were the items specifically mentioned at the final hearing and requested by Husband's Attorney in emails to Wife's Attorney. Tr. p. 118-119; Pet. Ex. 15. The trial

court ordered in the decree that the above items should be transferred to Husband within ten days.[3]

[24] Evidence at the final hearing showed that Husband had previously obtained at least some personal property from the marital residence, so the trial court's finding is not erroneous. Tr. p. 117. However, even if Husband had not previously taken any property from the marital residence, the parties stipulated to the items that the parties would transfer during the final hearing, and the trial court did not abuse its discretion in ordering the parties to abide by that stipulation. Tr. p. 118-119.

## IV. Wife's Compliance with Provisional Order

[25] Husband also argues that the trial court erred when it failed to address his claim that Wife had not complied with a provisional order to pay Husband $600 a month to help pay the mortgage on a property in Indianapolis. He maintains that the trial court was presented with evidence that wife was not current in her payments, and that the trial court should have awarded him the amounts not paid pursuant to the provisional agreement in the final decree. In general, a provisional order terminates when the final decree is entered, subject to right of appeal, or when the petition for dissolution or legal separation is dismissed. Ind. Code § 31-15-4-14. This means that a provisional order is merged and

---

[3] Husband attached affidavits laying claim to certain items of property in his motion to correct error. We will not consider these lists, as they are not newly discovered evidence as discussed in paragraphs twenty and twenty-one of this memorandum decision.

extinguished in the final decree. *Dillon v. Dillon*, 696 N.E.2d 85, 87 (Ind. Ct. App. 1998).

[26] At the final hearing, there was some discussion regarding when and if Wife had paid Husband according to the terms of the provisional order. However, it is clear that Wife testified that she had not paid Husband the $600 for December or January. Tr. p. 49-52. Yet, the trial court made no findings with respect to the payments required by the provisional order. As such, we remand this case to the trial court so that it may amend its final decree to include a finding regarding wife's responsibilities under the provisional order.

# V. Tax Liabilities

[27] Husband and Wife both stipulate to the existence of a tax liability incurred during the marriage, and both request that we remand this matter to the trial court. The parties testified regarding the tax liability at the final hearing. Tr. p. 41-42, 64. The trial court also had before it a letter from the Internal Revenue Service addressed to Husband and Wife asserting a joint tax liability. Resp. Ex. D. The trial court incorrectly determined that the parties had "no joint debts." Appellant's App. p. 26. Therefore, we remand this case to the trial court to determine joint tax liability.

[28] The judgment of the trial court is affirmed and remanded for the limited purposes of determining wife's responsibilities under the provisional agreement and determining joint tax liability.

[29] Vaidik, C.J., and Riley, J., concur.