CITIZENS' STATE BANK OF CARMEL v. PERISHO.

[No. 11,096.   Filed April 28, 1921.   Rehearing denied June 30, 1921.   Transfer denied December 6, 1921.]

1. BANKS AND BANKING.—*Assessments on Bank Stock.—Failure to Pay.—Sale of Stock.—Owner's Right to Proceeds.—Statutes.* —Under .§3341 Burns 1914, Acts 1895 p. 202, providing that, whenever the auditor of state shall have reason to believe that the capital stock of any bank is reduced by impairment, the stock must be assessed to make good the deficiency, and if any stockholder fails to pay the assessment, his stock must be sold, the proceeds of such a sale after the payment of the costs of the proceeding belong to the stockholder, and are not part of the bank's assets. p. 72.

2. BANKS AND BANKING.—*Assessments on Bank Stock.—Appropriation of Proceeds by Bank.—Legalizing Act.—Scope and Applicability.—Statutes.*—Where bank stock was sold pursuant to §3341 Burns 1914, Acts 1895 p. 202, and the proceeds used to pay creditors of the bank, and the stockholder owning such stock sued the bank for the proceeds of the sale and obtained judgment and an appeal was taken by the bank, and, pending the appeal, Acts 1919 p. 832 was passed purporting to so amend the former statute as to legalize the use of the proceeds of bank stock sold thereunder to make good an impairment of the capital stock or to pay the bank's debts, such amendment did not affect plaintiff's right to the proceeds of the sale of her stock, since the cause of action based upon the sale transaction was merged in the judgment which was still operative, though in abeyance and unenforceable during the pendency of the appeal. p. 74.

3. BANKS AND BANKING.—*Assessments on Bank Stock.—Failure to Pay.—Sale of Stock.—Owner's Right to Proceeds.—Stock in the Name of Another.*—Where bank stock was sold pursuant to §3341 Burns 1914, Acts 1895 p. 202, the fact that the owner of the stock had neglected to have the stock transferred to her name on the books of the bank did not affect her right to the proceeds of the sale, the bank having recognized her ownership. p. 75.

From Madison Superior Court; *Willis S. Ellis,* Judge.

Action by Rosa Perisho against the Citizens State Bank of. Carmel. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

J. *Fred Masters*, for appellant.
*Wilson S. Doan* and *James C. Mathews*, for appellee.

NICHOLS, J.—Action by appellee against appellant to recover damages for an alleged conversion of bank stock and the proceeds arising from the sale thereof.

The complaint is in two paragraphs to which an answer in general denial was filed and the cause submitted to the court for trial. There was a finding and judgment in favor of appellee for $2,500 and costs. After motion for a new trial was overruled, appellant prosecutes this appeal, assigning as the only error the action of the court in overruling appellant's motion for a new trial, the reasons for which that are presented, were: (1) That the decision of the court was not sustained by sufficient evidence; (2) that the decision of the court was contrary to law.

It appears by the evidence that the stock certificates representing $2,500 of the capital stock of appellant bank came into the hands of appellee from the executor of her mother's estate, and were being held by appellee without being transferred upon the books of the bank. Subsequent to the delivery of the certificates to appellee the bank by its board of directors pursuant to the order of the auditor of state as provided by law levied an assessment of 100 per cent. on all capital stock of said bank for the purpose of making good a reduction of. capital stock by impairment, said bank then being in the hands of the auditor of state pending the qualification of a receiver then appointed, and was insolvent and the capital stock impaired. After said assessment had been made and after all others had paid their full assessment, the request was made by the bank upon the auditor of

state that appellee's stock be appraised and sold and the terms and conditions of sale be prescribed which the auditor of state accordingly did. Said sale was had pursuant to such order, after notice to appellee, and the proceeds derived therefrom used in "making good the reduction of capital stock by impairment," and was eventually used to pay the creditors of the bank. Appellee contends that under the law governing assessments in such cases, she was entitled to the proceeds of the sale for which she made demand after sale, and after refusal to pay such proceeds to her she commenced this action.

Section 3341 Burns 1914, Acts 1895 p. 202, provides: "Whenever the auditor of state shall have reason to believe that the capital stock of any of said asso-

1.    ciations is reduced by impairment or otherwise below the amount required by law or by its articles of association and certificate of increase or decrease of capital, as the case may be, the auditor shall require the deficiency to be made good and the board of directors shall immediately give notice of said requisition to each stock holder of the amount of assessment which he must pay. * * * If any stockholder shall refuse or fail to pay the assessment specified in the notice within sixty days from the date thereof, said directors shall have the right to sell said stock, or any part thereof, to the highest bidder at public or private auction, and with or without notice as the auditor may direct the sale to be made, * * * and from the proceeds of sale shall first be deducted the cost thereof." There is no allegation that the method of sale of stock prescribed in the foregoing section was not followed, and the validity of the sale is not challenged. It will be observed, however, that the only provision made for the distribution of the proceeds of sale is that such proceeds shall be first applied to the payment of the costs

of the proceeding. This same section of our statute was involved in the case of *Chicago Title & Trust Co.* v. *State Bank* (1898), 86 Fed. 863, in which case it appears that the sale had been made under the provisions of the same statute, and in which case it appeared that the appellant was the owner of the shares of stock which were sold. After such sale appellant demanded the proceeds of the sale after the expense of sale was deducted, and upon refusal appellant brought its action in the district court of Indiana. Upon judgment being rendered against·it, it appealed to the circuit court of the United States of the district of Indiana where the judgment of the trial court was reversed, the court saying: "The directors are empowered to sell, provided the purchaser will pay as much as the value certified by the auditor; but it is nowhere stated in this statute that the price received by the directors shall go to and become the property of the bank. Presumably, the price, less the expenses of sale, would belong to the owner of the stock sold. In such case the bank would lose nothing. The purpose of the statute is apparently to enable the bank to get rid of unwilling stockholders, and go on with its business. The extra obligation of shareholders for debts and liabilities of the corporation in default of assets.is fully provided for in other portions of the statute. No obligation of that sort is involved here. The statute does not in terms or by necessary implication create any obligation on stockholders to pay more than full par value of the shares merely to replenish or replace capital lost in the business of the corporation. Counsel do not question the validity of the amendment as concerns the sale of shares in the manner provided in case the holder does not choose to pay the assessment made by the auditor. Apparently the bank may be wound up if stockholders, or persons willing to become stockholders, by purchase in the manner directed, do not replenish the

capital as directed by the auditor. But, whatever may be the precise meaning and policy of this statute, we do not find in it satisfactory ground for the ruling that these plaintiffs in error, owning the 100 full-paid shares, must forfeit $4,000—that being the entire value of the shares sold pursuant to the direction of the auditor—because they did not elect to pay $6,000 additional in order to replenish the capital and enable the business to continue. The statute does not say that the $4,000—the price received for these shares—should be forfeited by the owners; it does not say that the bank should become owner either of the shares or the money received as the price of the same. The directors had, according to the statute, the power to sell for the price fixed by the auditor, but not the right to withhold that price, less the expense of the sale, from the owner of the shares. Whether or not, if such were the expressed meaning, the statute would be valid or constitutional, is a question which need not be discussed." The foregoing opinion is in harmony with our interpretation of the statute involved. The statute is absolutely silent as to the disposition to be made of the proceeds of the sale, and under such circumstances the proceeds must of necessity belong to the appellee.

Appellant has filed, as an additional authority, an act of the general assembly of the State of Indiana, Acts 1919 p. 832, which is an amendment of the act involved in this action, and under which the sale involved was made, §2 of which act provides that: "All sales of stock heretofore or assessments collected under this act, and as set out in section 13 of an act entitled 'An act to authorize and regulate the incorporation of banks of discount and deposit in the State of Indiana,' approved Feb. 7, 1873, and acts amendatory thereto, the same being §3341 Burns 1914 and in substantial compliance therewith, and wherein the proceeds of sale

were applied to the reduction of or making good an impairment of capital stock or paying the debts of such association are hereby legalized and made binding upon all parties who had notice of such sale." At the time that this amendatory act became a law, this action was pending on appeal in the Supreme Court from which it has been transferred to this court for want of jurisdiction in the Supreme Court.

Appellee's cause of action based upon the sale transaction was then merged in the judgment which was still operative, though in abeyance and unenforceable during the pendency of this appeal. 2 R. C. L. 117.

In *Searcy* v. *Patriot and Barkworks Turnpike Company* (1881), 79 Ind. 274, 280, the court speaking with reference to an injunction which had been decreed said: "It was not the power of the General Assembly, while said judgment and decree remained in full force, to virtually dissolve and set aside the perpetual injunction thereby granted, and to authorize the collection from the appellants of the assessment of benefits, which a court of competent jurisdiction had declared illegal and invalid." This authority is directly in point. The act of the legislature of 1919, does not invalidate the judgment here involved. The fact that appellee had not had the stock transferred to her name on the books of the bank cannot help appellant. Appellee's ownership was recognized by appellant, and under the statute then in force, she was entitled to the proceeds of the sale thereof.

The judgment is affirmed.